Michael Hucul
PO Box 2638
San Marcos, CA 92079
(616) 828-9533
hucul@sbcglobal.net

FILED

17 JUL 28 AM 11: 27

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Michael Hucul, a Father and a Parent with joint custody of his child and those similarly like him,

    Plaintiff(s),

v.

The County of San Diego, the San Diego County Department of Child Support Services (DCSS) and it's Director, Alisha Griffin as an individual and in her official capacity,

    Defendants.

Case No.: 17CV1531 CAB MDD

**Complaint: Violations of the Fair Debt Collection Practices Act. (15 U.S.C. §§1692 et seq.), and The Rosenthal Fair Debt Collection Practices Act, (California Civil Code §§1788 et seq.)**

1

# TABLE OF CONTENTS

Table of Authorities……………………………………………………………3, 4

Jurisdiction……………………………………………………………………….5

Statement of the Case……………………………………………………………5

Statement of the Facts……………………………………………………………5

The Fair Debt Collection Practices Act (FDCPA)……………………………….8

Argument…………………………………………………………………………8

Conclusion……………………………………………………………………….9

# TABLE OF AUTHORITIES

Amelina v. Manufacturers and Traders Trust Company,
Dist. Court, SD California (2015)..............................................12

Anderson v. Warner,
451 F. 3d 1063 (9th Cir. 2006).................................................4

Bivens v. Six Unknown Fed. Narcotics Agents,
403 US 388 (1971)................................................................4

Dutton v. Wolhar,
809 F. Supp. 1130 - Dist. Court, D. Delaware (1992).........................12

Ernst v. Jesse L. Riddle, Pc,
964 F. Supp. 213 - Dist. Court, MD Louisiana (1997).........................9

Fausto v. Credigy Services Corp.,
598 F. Supp. 2d 1049 - Dist. Court, ND California (2009)...............7, 10

Goodin v. Bank of America, NA,
114 F. Supp. 3d 1197 - Dist. Court, MD Florida (2015)......................13

Heintz v. Jenkins,
514 US 291, (1995)...............................................................4

Hicken v. Arnold, Anderson & Dove, PLLP,
137 F. Supp. 2d 1141, (2001)....................................................4

In re Foster,
319 F. 3d 495 - Court of Appeals, 9th Circuit (2003)........................9

Los Angeles v. Lyons,
461 US 95, (1983).................................................................6

Mabe v. GC Services Ltd. Partnership,
(1994)..........................................................................4, 9

Matal v. Tam, Supreme Court
(2017)....................................................................................................9

McDermott v. Marcus, Errico, Emmer & Brooks, PC,
911 F. Supp. 2d 1 - Dist. Court, D. Massachusetts (2012)....................7

Monell v. New York City Dept. of Social Servs.,
436 US 658 (1978).................................................................................4

Polanco v. NCO Portfolio Management, Inc.,
132 F. Supp. 3d 567 - Dist. Court, SD New York (2015)....................10

Provo v. Rady Children's Hospital,
SD California (2015)............................................................................11

Robinson v. Shell Oil Co.,
519 US 337, (1997)................................................................................7

Scott v. Universal Fidelity Corp.,
42 F. Supp. 2d 837 - Dist. Court, ND Illinois (1999)..........................13

Smith v. Law Offices of Mitchell N. Kay,
124 BR 182 - Dist. Court, D. Delaware (1991)....................................13

Sullivan v. Stroop,
496 US 478, (1990)................................................................................9

Turner v. Cook, Court of Appeals,
9th Circuit (2004).................................................................................10


## Jurisdiction

Jurisdiction is proper for this District Court under 15 U.S.C. §1692k(d)

## Statement of the Case

Because of the abusive practices and the inadequacy of the laws surrounding the collection efforts by the San Diego County's (County) Department of Child Support Services. (DCSS) Michael Hucul, on behalf of himself and those similarly like him, (Plaintiff(s)) file this suit and move the United States District Court, Southern District of California for the reliefs provided for under §1692 of Title 15 of the U.S.C. and §1788.10 -17 of Cal. Civ. Code .

Because these collections efforts also discriminate against "Fathers" and "Parents" with joint custody. Plaintiff(s) also motions this District Court to redress the grievances of our rights with §1983 of 42 U.S.C., and to be made whole from the damages caused by the practices of the County, DCSS and it's Director Alisha Griffin as an individual and in her official capacity. (Defendants) (Monell v. New York City Dept. of Social Servs., 436 US 658 (1978)) (Bivens v. Six Unknown Fed. Narcotics Agents, 403 US 388 (1971))

Because of the perceived errors of the District Court's interpretation of The Fair Debt Collection Practices Act, (FDCPA) in Hicken v. Arnold, Anderson & Dove, PLLP, 137 F. Supp. 2d 1141, (2001) and the 4th Circuit Court of Appeals interpretation of the FDCPA in Mabe v. GC Services Ltd. Partnership, (1994). This Plaintiff will try and overcome these errors and move this District Court using "the plain language of the statue". (Heintz v. Jenkins, 514 US 291, (1995))

## Statement of the Facts

On November 8, 2017 Plaintiff was granted joint-legal and joint-physical custody of his son. (Attachment "A") Since then, Plaintiff has suffered injuries during the unconstitutional proceedings in the Superior Court of San Diego, and is continuing to be a victim of harassment and deliberate indifference as a "Father". On February 3, 2016, the Superior Court found this Plaintiff owed $11,089 in child support arrears, the Superior Court added $1,109 in interest for a total of $12,198.00 owed in arrears. (Attachment "B") Plaintiff filed his "Complaint" (ECF 1) with the District Court on May 25, 2016,. (No. 16-CV-1244-JLS DHB) Now on appeal No. 17-55192. (Anderson v. Warner, 451 F. 3d 1063 (9th Cir. 2006))

On June 13, 2016, DCSS send Plaintiff a letter indicating he is now a "non-custodial" parent for purposes of 42 USC §654. Fraudulently changing Plaintiff(s) from a custodial/joint custodial parent to a non-custodial parent for the purposes of 42 USC §654 violates the FDCRA, (15 U.S.C. §§1692 et seq.) and The Rosenthal Fair Debt Collection Practices Act, (California Civil Code §§1788 et seq.) (RFDCPA) (Attachment "C")

On January 31, 2017, DCSS sent letters to Plaintiff that again designated Plaintiff as a non-custodial Parent and that Plaintiff had "multiple" child support cases in the State of California. This suggest Defendants are not only changing Plaintiff and those similarly like him from custodial/joint custodial parents to non-custodial parents for purposes of receiving Federal funds, but are they creating "multiple" cases from a single case? (Attachment "D")

On February 3 & 8, 2017 the DCSS sent letters to Plaintiff claiming he had no health insurance for his child, when the Court orders show that he did. And a letter warning Plaintiff that his driver license, passport, and his professional licenses would be revoked and his bank accounts seized. Violating the FDCRA and the RFDCPA. (Attachments "E" & "F")

On February 28, 2017, Plaintiff responded with a letter informing DCSS that he was appealing/disputing the Superior Court's procedures leading up to its orders in State and Federal Courts and wanted to be heard on the undisputed fact; there is no law for jurisdiction to order child support from a "parent" with joint custody. Plaintiff asked DCSS to refrain from contacting him or harassing him until these matters were resolved, activating parts of the FDCRA and RFDCPA. (Attachment "G")

On March 21, 2017, the State of California Bureau of Real Estate (Bureau) sent Plaintiff a letter indicating DCSS had contacted them and they were obligated to suspend Plaintiff's State of California Real Estate Brokers License. The Bureau included a copy of the DCSS letter which now claims Plaintiff as an "Absent" parent. Stating Plaintiff is an "Absent" parent who is behind on child support, defames Plaintiff causing the Bureau to react to the stigma that Plaintiff was an absent irresponsible "Father", when in fact Plaintiff has joint custody, supports his child, and is not an absent "Parent". These activities by DCSS also violate Plaintiff(s) rights under the FDCRA and the RFDCPA. (Attachment "H")

On April 20, 2017, DCSS sent a letter to Chase Bank requesting they take Plaintiff's money from his account and put a hold on it until the amount DCSS claims he owes is paid. On March 4, 2017, Chase sent Plaintiff a letter indicating they sent DCSS what little money Plaintiff had in his account and put a hold on it, violating Plaintiff's rights under the FDCRA and RFDCPA. (Attachment "I")

On May 18, 2017, James Kelley of the DCSS sent a letter indicating they wanted Plaintiff to send all appeal documents to him. But for their convenience Plaintiff had already referenced these appeal cases in his February 28, 2017 letter to DCSS. Plaintiff felt dismayed about Mr. Kelley requesting this information again, and replied with a letter dated May 24, 2017, referencing the February 28, 2017 letter which had the appeal information and suggested Mr. Kelley contact their attorneys handling these matters. (Attachment "J")

On July 7, 2017, the Bureau of Real Estate sent Plaintiff a "30 Day Warning Notice" indicating his real estate brokers license will be suspended on August 18, 2017. (Attachment "K")

On July 12, 2017, Plaintiff contacted the San Diego County Deputy Attorney General, Ricardo Enriquez to request a delay in the suspension of Plaintiff's license. Even though Plaintiff is making child support payments, under appeal, to his ex wife Mrs. Kren, Mr. Enriquez confirmed, Plaintiff's real estate broker's license would be suspended unless a stay was granted.

On July 13, 2017, Plaintiff received a call from Mia Cabrera of the DCSS, who became aware of the child support payments Plaintiff made to Mrs. Kren and yet Mia Cabrera also indicated a stay would be needed for Plaintiff to avoid having his real estate license suspended. Plaintiff received a call from Kathy of the Bureau of Real Estate, indicating Plaintiff needed a stay to avoid having his license suspended.

Defendants have frozen Plaintiff's bank account, threatened to suspend Plaintiff's Real Estate Brokers License, driver license and passport. These threats are both "real and immediate", Plaintiff, with Rules of Civil Procedure Rule 62, prays this District Court will stay all collection activities by the DCSS while these matters are heard in this District Court. (Los Angeles v. Lyons, 461 US 95 - Supreme Court (1983)).

Title IV-D of the Social Security Act "appropriates" funds to the States for the purposes of enforcing child support obligations owed by "noncustodial" "absent" parent. Sec. 451. [42 U.S.C. 651]

Sections 3025, 3029, 3556, 3557, 4007, 4053, 4054, 4055, 4201, 4204 and 4504 of the California Family Code, (Family Code) imply child support is paid by the noncustodial/absent parent to the custodial parent. Sections 4014, 4050, 4052.5, 4056, 4065 and 5700.101 indicate the Family Code follows Federal laws, mandates and guidelines. To reiterate, Plaintiff has joint-custody and Defendants have unilaterally changed Plaintiff(s) status to a non-custodial to parent so Defendants can collect Federal funds.

## The Fair Debt Collection Practices Act
### Argument

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent." United States v. Ron Pair Enterprises, Inc., 489 U. S. 235, 240 (1989); see also Connecticut Nat. Bank v. Germain, 503 U. S. 249, 253 254 (1992). The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole". (Robinson v. Shell Oil Co., 519 US 337, (1997))

15 U.S.C. §1692(a)(5) states, "The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment".

Reading the FDCPA in it's plain language, a "debt" is "any obligation or alleged obligation", (Fausto v. Credigy Services Corp., 598 F. Supp. 2d 1049 - Dist. Court, ND California (2009)) and is "not limited to a particular set of obligations; the obligation, must, however, be one to pay money". (McDermott v. Marcus, Errico, Emmer & Brooks, PC, 911 F. Supp. 2d 1 - Dist. Court, D. Massachusetts (2012))

8

The Fourth Circuit's interpretation of the FDCPA is, "a consumer is offered or extended the right to acquire 'money, property, insurance, or services' which are 'primarily for household purposes' and to defer payment ". The Fourth Circuit tied the word "consumer" and "debt together and interpreted the FDCPA to apply "only to consumer debt". (Mabe v. GC Services Ltd. Partnership, 32 F. 3d 86 - Court of Appeals, 4th Circuit (1994))

This position seems to limit or reduce the "breadth" of the FDCPA. The language "any debt" and "any obligation", are without exception. "The Court of Appeals for the Seventh Circuit has determined that "debt" requires no more than a "transaction creating an obligation to pay." (Berndt v. Fairfield Resorts, Inc., 337 F. Supp. 2d 1120 - Dist. Court, WD Wisconsin (2004)) "The first requisite element of debt under the FDCPA is the existence of an obligation". (Ernst v. Jesse L. Riddle, Pc, 964 F. Supp. 213 - Dist. Court, MD Louisiana (1997))

The FDCPA uses "any debt" and "any obligation", without exception including no child support exceptions, and this "statutory theme is coherent and consistent" throughout the FDCPA. (Matal v. Tam, Supreme Court (2017)) And, "The word "any" generally means all forms or types of the thing mentioned". (Sullivan v. Stroop, 496 US 478, (1990)) Child support is an "obligation" and a "debt". (In re Foster, 319 F. 3d 495 - Court of Appeals, 9th Circuit (2003))

The Fourth Circuit is adding exceptions by inferring only those debts, for "household purposes", accrued from the action of obtaining credit. In fact taking the Fourth Circuit's interpretation and replacing the term "money" with "credit", and the text of the statue would read like this, '... of a consumer to pay with "CREDIT" arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for household purposes'.

When the actual text reads like this, "...of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes". A clue the Fourth Circuit's interpretation sways away from the "plain language" of the statute is that it infers to, "pay money" for money.

The plain language of the statute reads "the money" the consumer is using, or, if using "property, insurance or services" are the "subject" of the "transaction". The Fourth Circuit's interpretation wants to make credit the "subject" of what is used to purchase "money, property, insurance or services". The FDCPA's plain language has a much larger breadth making the "money, property, insurance, or services of the "transaction", the "subject", and a key to it's larger breadth is where it states, "... whether or not such obligation has been reduced to judgment", like child support.

There also appears to be confusion surrounding the word "consumer". The FDCPA defines "consumer" as, "any natural person obligated or allegedly obligated to pay any debt". (Turner v. Cook, Court of Appeals, 9th Circuit (2004)) The Fourth Circuit appears to take the word "consumer" as representative to only those actions of obtaining credit to purchase "money, property, insurance, or services which are primarily for household purposes".

Even when the procedures to the order are under appeal, under the FDCPA, Plaintiff became a "consumer" when the "alleged obligation" to pay child support arrears came from the San Diego County Superior Court's order. (judgement) Court "orders can be the manifestation of consumer debt covered by the FDCPA". (Polanco v. NCO Portfolio Management, Inc., 132 F. Supp. 3d 567 - Dist. Court, SD New York (2015))  The FDCPA defines "debt" as "any obligation" or "alleged obligation". (Fausto v. Credigy Services Corp., 598 F. Supp. 2d 1049 - Dist. Court, ND California (2009))

10

Transaction is not defined by the FDCPA; (Turner v. Cook, Court of Appeals, 9th Circuit (2004)) but Black's Law Dictionary defines transaction in part as, "Whatever may be done by one person which affects another's rights, and out of which a cause of action may arise". (Attachment "L")

When Plaintiff(s) make child support payments (obligation) (consumer) on the arrears, (debt) (judgement) for their child, (family) it is a transaction. And if Plaintiff(s) fail to make a child support payment, whether on appeal or not, the DCSS becomes the "debt collector" for the person who is designated to receive the child support payment.

Debt collector is defined as "any person" "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another". (§1692(a)(6))

"Under section 1692e of the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Courts apply the least sophisticated debtor test to determine whether the challenged provision is "likely to deceive or mislead a hypothetical `least sophisticated debtor.'" Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996)".(Provo v. Rady Children's Hospital-San Diego, Dist. Court, SD California (2015))

On several different occasions, a few of our Congressional Leaders have proposed changes to the FDCPA to include an exception for child support collection agencies as a "debt collector", in these three instance the bills have failed. H.R. 3836 for the 103rd Congress 2nd Session, S. 1383 for the 112th Congress 1st Session and S. 508 for the 113th Congress 1st Session. (Attachment "M")

11

"A reading of the plain language of the Act demonstrates that § 1692k does not limit recovery to "consumers." Instead, it imposes liability where a debt collector has failed to comply with the Act with respect to "any person." 15 U.S.C. § 1692k (1988). In addition, none of the sections of the Act before this Court on Dutton's motion for summary judgment limits its proscriptions to "consumers." See 15 U.S.C. §§ 1692e(2)(A), e(5), e(10) and e(11) (1988). The legislative history of the FDCPA supports this reading of the Act. As noted by House Report 95131: This bill also protects people who do not owe money at all". (Dutton v. Wolhar, 809 F. Supp. 1130 - Dist. Court, D. Delaware (1992))

Here the DCSS has several times used fraud, "false, deceptive, and misleading representation" of this Plaintiff as a "non-custodial" and "absent" Parent, causing damages and emotional duress.   (See Attachments "C"-"K") And Plaintiff also files this complaint under Rule 9(b).

## CONCLUSION

Because the DCSS is a Debt Collector within the meaning of the FDCPA and Plaintiff(s) have obligations to debts within the meaning of the FDCPA and are being abused by Defendants in the way they train the DCSS to collect the debts they claim Plaintiff(s) owe; Plaintiff(s) request this Court to grant the necessary relief to stay Defendant's current collection procedures against Plaintiff and certify Plaintiff(s) as a class action under Rule 23(c)(1)(A)(B)(C).

"To state a claim under the FDCPA, a plaintiff must allege facts that establish (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. (Amelina v. Manufacturers and Traders Trust Company, Dist. Court, SD California (2015))

1
2
3
4
5
6
7   Plaintiff is seeking statutory damages; actual damages of $75,000 from emotional distress of, A) mental anguish, B) embarrassment, and C) humiliation; (Smith v. Law Offices of Mitchell N. Kay, 124 BR 182 - Dist. Court, D. Delaware (1991)), $800,000 in punitive damages for false and fraudulent statements to collect Federal funds, (Goodin v. Bank of America, NA, 114 F. Supp. 3d 1197 - Dist. Court, MD Florida (2015)) and for certification of class action, $500,000 or 1% of Defendants net worth, whichever is less. (Scott v. Universal Fidelity Corp., 42 F. Supp. 2d 837 - Dist. Court, ND Illinois (1999))

Respectfully submitted,

Dated: July 28, 2017

Michael Hucul
In Pro Se
(616) 828-9533
hucul@sbcglobal.net