1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   MICHAEL HUCUL, a Father and Parent          Case No.: 17-CV-1531 JLS (MDD)
     with joint custody of his child and those
12   similarly like him,
                                                 **ORDER: (1) GRANTING**
13                                Plaintiff,      **DEFENDANT COUNTY OF SAN**
                                                 **DIEGO'S MOTION TO DISMISS;**
14   v.                                          **(2) GRANTING DEFENDANT**
                                                 **GRIFFIN'S MOTION TO DISMISS;**
15   THE COUNTY OF SAN DIEGO, THE                **(3) DISMISSING WITH PREJUDICE**
     SAN DIEGO COUNTY DEPARTMENT                 **PLAINTIFF'S COMPLAINT;**
16   OF CHILD SUPPORT SERVICES                   **(4) DENYING PLAINTIFF'S**
     (DCSS) AND IT'S DIRECTOR, ALISHA            **MOTION TO STRIKE; AND**
17   GRIFFIN, as an individual and in her        **(5) DENYING PLAINTIFF'S EX**
     official capacity,                          **PARTE MOTION TO RELEASE**
18                                               **PLAINTIFF'S BANK FUNDS**
                                  Defendants.
19
                                                 (ECF Nos. 8, 9, 10, 15)
20

21

22

23

24

25

26          Presently before the Court are Defendant County of San Diego (who is both named

27   and erroneously sued as the San Diego County Department of Child Support Services)'s

28   Motion to Dismiss Plaintiff's Complaint, ("County MTD," ECF No. 8), and Defendant

                                                1

                                                                          17-CV-1531 JLS (MDD)

Alisha Griffin's Motion to Dismiss Plaintiff's Complaint, ("Griffin MTD," ECF No. 9). Also before the Court are Plaintiff Michael Hucul's Opposition to ("Opp'n," ECF No. 11), and Defendants Replies in Support of, (ECF Nos. 12, 13), the respective Motions to Dismiss. Additionally, Defendant Alisha Griffin filed a Request for Judicial Notice, (ECF No. 9-1) in conjunction with her Motion to Dismiss. Finally, Plaintiff filed a Motion to Strike, (ECF No. 10), and an *ex parte* Motion to Release Plaintiff's Bank Funds, (ECF No. 15). Defendants filed Oppositions to, (ECF Nos. 17, 18), and Plaintiff filed a Reply in Support of, (ECF No. 19), the *ex parte* Motion to Release Plaintiff's Bank Funds.

The Court takes these matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments and the law, the Court **GRANTS** Defendant County of San Diego's Motion to Dismiss, (ECF No. 8), **GRANTS** Defendant Alisha Griffin's Motion to Dismiss, (ECF No. 9), and **DISMISSES WITH PREJUDICE** Plaintiff's Complaint, (ECF No. 1). The Court **DENIES AS MOOT** Defendant Alisha Griffin's Request for Judicial Notice, (ECF No. 9-1), **DENIES** Plaintiff's Motion to Strike, (ECF No. 10), and **DENIES** Plaintiff's Motion to Release Plaintiff's Bank Funds, (ECF No. 15).

## BACKGROUND

On November 8, 2013,[1] Plaintiff was granted joint physical and joint legal custody of his son. ("Compl.," ECF No. 1, at 5.)[2] On February 3, 2016, the Superior Court of San Diego found that Plaintiff owed $12,198.00 in child support payments. (*Id.*) On June 13, 2016, the Department of Child Support Services ("DCSS") sent Plaintiff a letter stating that he was a "non-custodial" parent for the purposes of 42 U.S.C. § 654. (*Id.* at 6.) On January 31, 2017, DCSS sent a letter to Plaintiff again labeling him as a non-custodial parent and stating he had "multiple" child support payments due. (*Id.*) On February 3 and

---

[1] In his Complaint, Plaintiff states the date of his custody determination was November 8, 2017. The Court assumes this is a scrivener's error—the exhibit attached to the Complaint lists the date as November 8, 2013. (*See* ECF No. 1-2, at 2.)

[2] For ease of reference, pin citations are to the CM/ECF page numbers electronically stamped at the top of each page.

8, 2017, DCSS sent letters to Plaintiff stating he did not have health insurance for his child and threatened to revoke his driver's license, passport, and professional license and that his bank accounts would be seized. (*Id.*) On March 21, 2017, the State of California Bureau of Real Estate sent Plaintiff a letter stating that DCSS had contacted the Bureau that they were obligated to suspend Plaintiff's real estate broker's license. (*Id.*)

On April 20, 2017, Plaintiff received a letter from DCSS[3] telling him that DCSS would instruct Chase Bank to withhold deposited assets belonging to Plaintiff. (*Id.* at 7.) On May 4, 2017,[4] Chase sent a letter to Plaintiff stating they placed his funds on hold. (*Id.*) On May 18, 2017, DCSS sent a letter to Plaintiff noting that he had appealed certain orders in state and federal litigation[5] and requested all appeal documents be sent to DCSS. (*Id.*) On May 24, 2017, Plaintiff sent a letter to DCSS stating he was "dismayed" by DCSS's most recent letter and requested that the DCSS representative contact the department's attorneys. (*Id.*) On July 7, 2017, Plaintiff received a 30-day notice from the Bureau of Real Estate that they would suspend his license in thirty days; five days later Plaintiff sent a letter to DCSS requesting a delay in the suspension of his license. (*Id.*) The next day, Plaintiff received calls from a DCSS representative and a Bureau of Real Estate representative confirming that he needed a stay to avoid having his license suspended. (*Id.*) Plaintiff filed the present Complaint on July 28, 2017.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Federal district courts are courts of limited jurisdiction

---

[3] Plaintiff alleges that this letter was sent to Chase Bank from DCSS, but his attached exhibit is from DCSS to Plaintiff. (Ex. I, ECF No. 1-2, at 29.)

[4] Plaintiff alleges this letter was sent on March 4, 2017, but his exhibit states this letter was sent May 4, 2017. (Ex. I, ECF No. 1-2, at 30.)

[5] The federal litigation referenced is *Hucul v. Mathews Burwell*, No. 16-CV-1244-JLS-DHB, which was recently affirmed by the Ninth Circuit, *see Hucul v. U.S. Dep't of Health & Human Servs.*, 703 Fed. App'x 542 (9th Cir. 2017). The state court litigation is described in depth in the California Court of Appeal's opinion in *In re Marriage of J.K. and M.H.*, No. D072075, 2017 WL 6109465, at *1–4 (Cal. Ct. App. Dec. 8, 2017) (unpublished opinion), which affirmed the state Superior Court's judgment against Plaintiff.

that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction" and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotations and citations omitted). The plaintiff bears the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 538 F.3d 1107, 1110 (9th Cir. 2008).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* To adjudicate the factual challenge, the Court may review evidence beyond the complaint without converting the Rule 12(b)(1) motion into one for summary judgment. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *David v. Giurbino*, 488 F. Supp. 2d 1048, 1054 (S.D. Cal. 2007). Once the moving party makes a factual challenge by bringing evidence before the Court, the opposing party must furnish its own affidavits or other evidence to establish subject matter jurisdiction. *Safe Air*, 373 F.3d at 1039; *Savage*, 343 F.3d at 1039 n.2. Without assuming the truth of the complaint's factual allegations, the Court nonetheless resolves factual disputes in favor of the non-moving party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996); *Farrah v. Monterey Transfer & Storage, Inc.*, 555 F. Supp. 2d 1055, 1067-68 (N.D. Cal. 2008).

In the facial challenge, the defendant asserts the insufficiency of the complaint's allegations to invoke federal jurisdiction as a matter of law. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005); *Cross v. Pac. Coast Plaza Invs., L.P.*, No. 6 CV 2543 JM (RBB), 2007 WL 951772, at *1 (S.D. Cal. Mar. 6, 2007). To adjudicate the facial challenge, the Court assumes the truth of the allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Whisnant*, 400 F.3d at 1177; *Wolfe v.*

*Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## ANALYSIS

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction. (County MTD 11; Griffin MTD 12.) Defendant County of San Diego argues that this Court lacks jurisdiction because of either the *Rooker-Feldman* doctrine or *Younger* abstention doctrine. (County MTD 12.) Additionally, Defendant Griffin argues that (1) the Eleventh Amendment bars Plaintiff's claims against her, in her official capacity; (2) she is entitled to qualified immunity; (3) Plaintiff's claims are barred by the California Tort Claims Act; and (4) Plaintiff has failed to plead exhaustion of administrative remedies under California Family Code section 17801. (*See* Griffin MTD 17–21.)

Under the *Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction to hear what are essentially appeals from state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005); *Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir. 2012) ("It is a forbidden de facto appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." (internal quotation marks omitted)). "The purpose of the doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence being called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).

The doctrine is a narrow one: it "does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment in state court." *Cooper*, 704 F.3d at 778 (quoting *Skinner v. Switzer*, 562 U.S. 521, 531 (2011)). The doctrine prohibits "plaintiffs, having lost in state court, 'essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments.'" *Id.* (quoting *Exxon Mobil*, 544 U.S. at 283).

A district court is barred from considering claims that are "inextricably intertwined"

with a state court judgment. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). A claim is "inextricably intertwined" with a state court judgment if "the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Id.* "*Rooker–Feldman* bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims." *Id.* at 901 (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002); and citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). Put differently, identifying inextricably intertwined issues involves determining "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Cooper*, 704 F.3d at 779 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

Here, Plaintiff brings a cause of action under the Fair Debt Collection Practices Act ("FDCPA") and its California counterpart, the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). (Compl. 12.) Specifically, Plaintiff alleges that DCSS is a debt collector within the meaning of the FDCPA and Plaintiff has an obligation within the definition of the statute. (*Id.*) Further, Plaintiff alleges that Defendants violate the FDCPA in the way they train the DCSS to collect debts that DCSS claims Plaintiff owes. (*Id.*) Plaintiff also appears to bring a cause of action under 42 U.S.C. § 1983, *Monell v. New York City Dept. of Social Servs.*, 436 US 658 (1978), and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 US 388 (1971), but does not elaborate his theory of liability as to those claims.

Defendants both argue that *Rooker-Feldman* bars a district court review of FDCPA and RFDCPA claims that challenge the validity of a debt authorized by state court judgment. (County MTD 13–14; Griffin MTD 14–15.) Defendants cite *Fleming v. Gordon & Wong Law Group, P.C.*, 723 F. Supp. 2d 1219, 1223 (N.D. Cal. 2010), in support of the proposition that an FDCPA claim is "inexplicably intertwined" with the state court judgment. They argue that Plaintiff's Complaint is a de facto appeal of various state court

child custody and child support judgments, (Griffin MTD 15), and that this Court would need to decide whether the Superior Court correctly ordered Plaintiff to pay child support, (County MTD 14).

In opposition, Plaintiff counters that he is not requesting this Court to review any previous state court decisions. (Opp'n 9.) Plaintiff also attempts to distinguish *Fleming* on the grounds that *Fleming* dealt with a writ of execution and here, Plaintiff allegedly owes his wife $12,198 in child support. (*Id.*) He argues that:

> [T]he subject matter is the practices of Defendant County, DCSS and the policies Defendants County and Director use to train the DCSS to engage in practices that use "false, deceptive and misleading" characterizations of Plaintiff, his debt and try to coerce payments with threats of having his Real Estate Brokers License suspended. These acts are clearly prohibited by the FDCPA regardless if the debt/child support actually exists.

(*Id.* at 10.) Plaintiff goes on to contend that Defendants train DCSS officials to make false representations, like Plaintiff is a "non-custodial" parent who is "severely" behind on child support payments. (*Id.*)

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The FDCPA broadly prohibits a debt collector from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 (9th Cir. 2005) (per curiam) (quoting 15 U.S.C. § 1692e). To prosecute a FDCPA claim, Plaintiff would need to establish that he meets the various statutory definitions, *see* § 1692a, and that DCSS uses "false, deceptive and misleading" representation or means in connection with Plaintiff's debt, *see* § 1692e.

At its core, Plaintiff's Complaint asks the Court to determine that DCSS was without authority to collect Plaintiff's child support, otherwise there would be no basis for an FDCPA or RFDCPA claim. For example, Plaintiff alleges the he "has suffered injuries

7

during the unconstitutional proceedings in the Superior Court of San Diego." (Compl. 5.) And, the Superior Court found that Plaintiff owed $12,198 in arrears. (*Id.*) In certain circumstances, DCSS is authorized to use various means to collect child support once a state court determines a parent owes child support. *See* Cal. Fam. Code §§ 4204, 17302, 17522. DCSS sent various letters to Plaintiff detailing the various ways they would attempt to collect child support. (Compl. 6–7.) Plaintiff alleges that "[f]raudulently changing Plaintiff(s) from custodial/joint custodial parent to a non-custodial parent for the purposes of 42 U.S.C. § 654 violates the FDCRA, [sic] (15 U.S.C. §§ 1692 et seq.) and [t]he Rosenthal Fair Debt Collection Practices Act, (California Civil Code §§ 1788 et seq.)." (Compl. 6.) This statement reveals the ultimate issue: a federal court finding that DCSS violated the FDCPA and RFDCPA would necessarily require this Court to determine Plaintiff's custody status. This is exactly the determination barred by *Rooker-Feldman*; a federal district court reviewing a prior decision of state courts. Indeed, the district court in *Fleming* recognized "there is no question that the *Rooker-Feldman* doctrine bars a district court from reviewing an FDCPA claim that challenges the validity of a debt authorized by a state court judgment." 723 F. Supp. 2d at 1223.

Plaintiff's attempt to distinguish *Fleming* on the grounds that it dealt with a writ of execution is misplaced. In *Fleming*, the writ of execution, issued by the state court, allowed the defendant to collect a debt in the amount of $1,869. *Id.* at 1221. The dispositive fact is not how the court authorizes the debt to be collected, but rather that there is a valid state court judgment authorizing collection of a debt. The writ of execution is simply the means by which a person enforces a monetary judgment against a debtor. *See* Cal. Civ. Proc. Code § 699.510. DCSS has its own statutory authority to enforce a judgment. *See, e.g.*, Cal. Fam. Code §§ 4204, 17302, 17522. The Court also finds support by examining the type of relief sought by Plaintiffs. *See Cooper*, 704 F.3d at 777–78 (citation omitted). Here, Plaintiff seeks monetary damages well beyond the amount owed in child support arrears. (*See* Compl. 13.) He also requests the Court stay the current collection procedures against Plaintiff. (*Id.* at 12.) Monetary damages would go far beyond the amount he owes

to DCSS—such an outcome would effectively void the state court decision.[6]  *See Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (citation omitted). An injunction against collecting child support would achieve the same outcome: voiding the state court decision.

In sum, Plaintiff's FDCPA and RFDCPA claims necessarily rely on the state court judgments against him.  Like *Fleming*, Plaintiff's FDCPA and RFDCPA claims fail because *Rooker-Feldman* bars this Court from reviewing the validity of debt authorized by state court judgment.  *Id.* at 1223; *see also Bryant v. Gordon & Wong Law Group, P.C.*, 681 F. Supp. 2d. 1205, 1208 (E.D. Cal. 2010) ("The net effect is that Plaintiff is seeking to undermine the state court judgments.  These judgments were rendered before the current district court proceeding, and any action by this Court in favor of Plaintiff on his FDCPA or RFDCPA claims would necessarily require review of those state court judgments.").

Plaintiff's *Monell*, *Bivens*, and 42 U.S.C. § 1983 claims also implicate the *Rooker-Feldman* doctrine.  Plaintiff's legal theory here is not clear, but it appears that he alleges DCSS Director Alisha Griffin is liable under *Monell* and section 1983 for the practices of DCSS.  (Compl. 5; *see also* Opp'n 10.)  Plaintiff also argues that when DCSS allegedly violates FDCPA such a violation also gives rise to a section 1983, *Monell*, and *Bivens* claim.  (Opp'n 10.)  All three theories do provide substantive rights and require an underlying statutory or constitutional violation.[7]  Thus, each claim would necessarily rely

_____

[6] The Court finds that Plaintiff is not bringing a general constitutional attack on the statutes underlying the judgments ordering him to pay child support.  Such a case would not be subject to the *Rooker-Feldman* bar.  *See Cooper*, 704 F.3d at 779–80 (citing *Skinner*, 562 U.S. at 528).  Plaintiff attacks the DCSS's conduct as to him; for example, the Superior Court determined he owed $12,189 in arrears and DCSS pursued this debt.  Plaintiff would have this Court substitute its determination as to his custody status and validity of debt for the state court's determination as to the same issues.

[7] To impose *Monell* liability, a plaintiff must show that she "possessed a constitutional right of which she was deprived."  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  *Bivens* allows a plaintiff to bring a damages action against individual *federal* officials for violating the Fourth Amendment.  *See W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009) (emphasis added).  Finally, section 1983 "is not itself a source of substantive rights, but is a mechanism for vindicating federal statutory or constitutional rights.  *Stilwell v. City of Williams*, 831 F.3d 1234, 1240 (9th Cir. 2016) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

on the FDCPA and RFDCPA claims, which are barred by *Rooker-Feldman*. Therefore, the Court finds the derivative section 1983, *Monell*, and *Bivens* claims are also barred.

In sum, the Court finds that it lacks subject-matter jurisdiction as to Plaintiff's FDCPA, RFDCPA, *Monell*, *Bivens*, and section 1983 claims under the *Rooker-Feldman* doctrine.[8] Because this Court lacks subject-matter jurisdiction, it must also dismiss Plaintiff's pending Motion to Strike and Motion to Release Plaintiff's Bank Funds. Both motions relate to the underlying causes of action for which this Court does not have subject-matter jurisdiction.[9]

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant County of San Diego's Motion to Dismiss, (ECF No. 8), **GRANTS** Defendant Alisha Griffin's Motion to Dismiss, (ECF No. 9), and **DISMISSES WITH PREJUDICE** Plaintiff's Complaint, (ECF No. 1). The Court finds that because it lacks subject matter jurisdiction any amendment arising from Plaintiff's state court judgments against him would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile.").

The Court **DENIES AS MOOT** Defendant Alisha Griffin's Request for Judicial Notice, (ECF No. 9-1), and **DENIES** Plaintiff's Motion to Strike, (ECF No. 10), and **DENIES** Plaintiff's *ex parte* Motion to Release Plaintiff's Bank Funds, (ECF No. 15).

/ / /

---

[8] Because the Court determines that it lacks subject-matter jurisdiction under *Rooker-Feldman*, the Court does not reach the other grounds for dismissal put forward by Defendants.

[9] Plaintiff's Motion to Strike requests the Court to strike various "immaterial, impertinent[,] and scandalous" material in both Defendants' motions to dismiss. (ECF No. 5, at 5.) Plaintiff's *ex parte* Motion for an Order to Release Plaintiff's Bank Funds requests the Court to do just that—unfreeze his bank accounts. (ECF No. 15.) Plaintiff's theory here is that DCSS began collecting or attempting to collect child support payments without a valid order from a court of competent jurisdiction. (*Id.* at 3.) Plaintiff cites California Code of Civil Procedure, but the Court believes Plaintiff meant California Family Code section 17404(f)(3). Section 17404(f)(3) provides for a court order to pay child support to the local child support agency. Plaintiff's argument here only reinforces the Court's *Rooker-Feldman* finding—an order granting Plaintiff's requested relief would require this Court to determine the validity of a state superior court's order pursuant to section 17404(f)(3).

17-CV-1531 JLS (MDD)

This Order ends the litigation in this matter.  The Clerk of Court **SHALL** close the file.

       **IT IS SO ORDERED.**

Dated:  March 5, 2018

Hon. Janis L. Sammartino
United States District Judge